# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

MARY A. KINDRED,                    )
                                    )
    Plaintiff,               )
                                    )
v.                                  )          No. 19-2660-TLP-tmp
                                    )
MEMPHIS LIGHT GAS & WATER,          )
                                    )
    Defendant.               )

---

### REPORT AND RECOMMENDATION
---

On September 30, 2019, plaintiff Mary Kindred filed a *pro se* complaint against Memphis Light Gas and Water ("MLGW") and multiple individuals, seeking damages for claims of disability and age discrimination. (ECF No. 1.) The individual claims have since been dismissed and MLGW is the only remaining defendant. Presently before the court is MLGW's Motion for Summary Judgment, filed on June 23, 2021.[1] (ECF No. 84.) Kindred responded to the motion on July 14, 2021, and MLGW replied on July 27, 2021. (ECF Nos. 87, 89). For the below reasons, the undersigned recommends that MLGW's Motion for Summary Judgment be granted.

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

# I.    PROPOSED FINDINGS OF FACT

Mary Kindred began working for MLGW on January 17, 2016, as a part-time Special Officer. (ECF No. 84-1 at 1.) Kindred was hired by MLGW from CDA Security, Inc. after the Memphis City Council passed an ordinance bringing MLGW's security personnel in-house. (ECF No. 87-1 at 1.) Former CDA employees assigned to MLGW properties were hired by MLGW as part-time employees, but it was understood that all would eventually be phased into full-time positions. (Id.) Special Officers were required to be present at their assigned properties in order to monitor clients and secure the premises. (ECF No. 84-1 at 2; ECF No. 84-2 at 35.) Kindred described her duties as follows:

> As an armed security officer, I would – I would – I was back in the counselor office and I would go to the front occasionally, you know, monitor the clients and, you know, if they got confrontational with the employees, you know, I would address that and I also worked at the main – the administration building sometimes occasionally.

(ECF No. 84-2 at 35.) Kindred testified that "be[ing] present at those locations to do your job" was "an essential part of [her] job." Id. She had been in security jobs and stationed at MLGW properties since at least 2006 and was 66 years old when she was brought in-house. (Id. at 34.)

After this change in official employer, Kindred's work schedule began to fluctuate, dropping from thirty hours a week to

between twenty and twenty-eight. (ECF No. 1 at 7.) She asked her supervisor Alonsia Hardy when her schedule would stabilize and when she would be converted to a full-time employee, but Hardy told her that he did not know. (Id.) Inquiries to Human Resources were similarly unhelpful, and by July 2016, Kindred began to believe she was being discriminated against based on her age. (Id.)

Kindred claims this pattern of discrimination continued throughout 2016 and "intensified in 2017[.]" (Id. at 8.) She was given more dangerous nighttime shifts than younger hires and saw multiple new hires brought on full-time while she remained relegated to part-time status, even though many of these new, younger hires did not possess the necessary licenses to be armed officers. (Id.) Kindred's pay also began to be manipulated as well. Her paystub listed her annual salary as far above what she was actually earning, and when she inquired about oddities on the checks, her "work hours became even more erratic." (Id.)

The stress began to build up and Kindred developed chronic depression and anxiety. On June 6, 2017, Elizabeth Storey, Kindred's Licensed Professional Counselor at New Directions Counseling Center, sent a letter to MLGW requesting that Kindred be granted medical leave "for approximately 4 to 6 weeks." (ECF No. 84-1 at 5, ECF No. 84-2 at 13.) Hardy responded with a letter on June 13, 2017. (ECF No. 84-1 at 2, ECF No. 84-2 at 15.) This

letter noted that "an UNUM packet" was attached that Kindred would need to complete and return to the MLGW Insurance Department. (ECF No. 84-2 at 15.) Hardy further stated MLGW was "concerned about [Kindred]" and requested she "keep [MLGW] updated on [her] status by calling me every Monday[.]" (Id.) Storey submitted some of the UNUM forms on June 27, 2017, but it was later determined Kindred did not meet the requirements for UNUM disability insurance due to her part-time status. (Id. at 29, 17.)

Kindred fully complied with the call-in procedure for the next six months.[2] (ECF No. 87-1 at 1.) On January 8, 2018, Hardy called Kindred and told her to come into the office for a meeting with Eric Conway, the Acting Manager of Employment Services, on January 10. (Id.) On that day, Kindred texted Hardy that she would be unable to come in due to a personal matter. (Id. at 1-2.) MLGW responded by sending a letter later that day, which rescheduled the meeting for "Wednesday, January 17, 2018, 10 A.M., in Employment Services." (ECF No. 84-2 at 17.) The letter stated this meeting was an "Americans with Disability Act Amendments Act

---

[2]MLGW alleges they were notified that Kindred was not complying with the call-in procedures. (ECF No. 84-1 at 2.) However, given the standard of review in summary judgment, the undersigned credits Kindred's version of events. McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016) ("[the court] must view all evidence in the light most favorable to the nonmoving party.")

(ADAAA) interactive process meeting to discuss [Kindred's] potential disability, how [MLGW] can aid [Kindred] in [her] return to work and [her] estimated return date," which was the first mention of any ADAAA proceedings.[3] (Id., ECF No 87-1 at 2.) MLGW stated that Kindred's attendance was mandatory. (ECF No. 84-2 at 17.) However, Kindred was unable to attend the January 17 meeting due to inclement weather and freeze advisories.[4] (ECF No. 87-1 at 2.) The meeting was rescheduled for February 2, 2018. (ECF No. 87-1 at 2; ECF No. 84-2 at 6.)

The day before this meeting, Storey faxed two letters to MLGW. In the first, Storey noted Kindred had participated in a scheduled session that day and that "it is suggested she continue to remain off work." (ECF No. 84-2 at 25.) Storey further said "[a] return to work date [was] undetermined at this time" and that she could provide updates after Kindred's next appointment on February 15, 2018. (Id.) After receiving this first letter, Conway called Kindred and informed her the letter was "inadequate because it did not specify" a return-to-work date. (ECF No. 87-1 at 2.) In

---

[3]MLGW disputes this, claiming that Hardy called Kindred on January 8, 2018, to explicitly schedule an ADAAA interactive meeting. (ECF No. 84-1 at 3.)

[4]Kindred notes that an appointment with Storey was canceled the day before for the same reason. (ECF No. 87-1 at 2; ECF No. 84-2 at 6.)

response, Storey faxed the second letter, dated January 29, 2018, which stated in full:

> Ms. Kindred was seen for a scheduled session today. Due to her being symptomatic it is suggested she continue to remain off work. A return to work date is undetermined at this time. It is estimated she may return to work on April 1, 2018. However, this is subject to change pending progress. An update on progress can be submitted per request prior to April 1.

(ECF No. 84-2 at 23.) This was the last communication between the parties before the February 2 call.

Kindred participated in this call under the impression that it would be "more like an interview with the Medical Coordinator (of MLGW) present," but the Medical Coordinator was not there. (ECF No. 87-1 at 2.) Instead, only Kindred, Conway, and Hardy attended. During the meeting, Kindred "stressed to Mr. Conway that should any further information be needed" he "could feel free to contact [Storey]." (Id.) The call ended abruptly, possibly due to a dropped signal. (Id.) Conway did not call Storey back or leave a voicemail, and Kindred considered the meeting over.[5] (Id.)

After the call, MLGW sent a letter on February 8, 2018, terminating Kindred's employment effective the next day. (ECF No.

---

[5]MLGW disputes Kindred's version of this call. According to their Statement of Undisputed Material Facts, Kindred became "agitated and rude" during the call before disconnecting. (ECF No. 84-1 at 4.) Conway further claims he attempted to call Kindred back but that she refused to answer, and that he left a voicemail as well. (Id.)

84-2 at 27.) The letter, written by Conway, stated he had "attempted several times to have an ADAAA interactive process with [Kindred] to understand [her] accommodation needs" and accused her of "refus[ing] to cooperate with the interactive process and disconnect[ing] the phone" during the February 2 call. (Id.) Conway noted he had received letters from Storey that provided a "likely return date of April 1, 2018[,]" but that Kindred was "still uncompliant with [MLGW's] request to complete and return the appropriate forms per our HR policy 22-13." (Id.) The letter concluded by claiming that Kindred's job required her "to be physically present to secure our facilities" and that the company had "afforded [Kindred] seven (7) months of leave to give [her] an opportunity to return[.]" (Id.) Conway stated the termination was due to "violation of MLGW HR Policy 22-13, Sick Leave and Short Term Disability Salary Continuation (Non Occupational Injury/Illness) and failure to cooperate in good faith in the ADAAA interactive process." (Id.)

Kindred then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 21, 2018. (ECF No. 84-2 at 44.) On the standard charge form, Kindred checked only the "disability" discrimination box. (Id.) She then listed the "particulars" of the claim as follows:

On June 7, 2017 I went out on medical leave. On January
29, 2018, a request was made for additional medical leave
thereafter; I was terminated February 9, 2018 for
alleged noncompliance regarding ADAAA interactive
process. I believe that I have been discriminated
against due to my disability in violation of the
Americans with Disabilities Act Amendments Act, ADAAA.

(Id.) However, Kindred did not check the disability discrimination box on her Pre-Charge Inquiry form and instead checked the age discrimination box. (ECF No. 1-1 at 5.) On this form, Kindred described MLGW's discriminatory action as "using a false allegation of noncompliance with provisions of the Americans with Disabilities Act to justify terminating her employment" and noted that "[n]o younger employee has been subjected to similar treatment." (Id.) When asked for comparator employees who were treated better than her, Kindred again checked "age" and claimed "all the younger employees were given the opportunity to work full-time[.]" (Id. at 7.) The EEOC issued a right to sue letter on July 2, 2019. (ECF No. 87-3 at 7.) In this letter, the EEOC only discussed Kindred's disability claims and stated that it was "unable to conclude that the information obtained establishes violations of the statutes." (Id. at 8.)

Kindred filed the present suit on September 30, 2019, proceeding *pro se*. (ECF No. 1.) Discovery proceeded with only minor motion practice. On June 23, 2021, MLGW filed a Motion for Summary Judgment, and Kindred responded on July 14, 2021. (ECF No. 84,

87.) MLGW then replied on July 27, 2021. (ECF No. 89.) In sum, MLGW argues that there are no disputes of material fact regarding Kindred's disability discrimination claim and that her age discrimination claim is procedurally barred. (ECF No. 84, 89.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991).

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cty. Bd. of Educ.,

330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible, unsworn hearsay in deciding a motion for summary judgment. Tranter v. Orick, 460 F. App'x 513, 514 (6th Cir. 2012). In order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). "In making this assessment, [the court] must view all evidence in the light most favorable to the nonmoving party." McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016). These standards apply regardless of a party's *pro se* status; "the liberal pleading standard for pro se parties is 'inapplicable' 'once a case has progressed to the summary judgment stage.'" George v. Whitmer, 2021 WL 1976314, at *2 (E.D. Mich. May 18, 2021) (quoting Tucker v. Union of Needletrades, Indus., & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005)). A *pro se* party's opposition to a motion for summary judgment cannot rely on "mere allegations and unsworn filings" but must instead "set out specific facts showing a genuine issue for trial through affidavits or otherwise" just like any other

response. Id. (citing Viergutz v. Lucent Techs., Inc., 375 F. App'x 482, 485 (6th Cir. 2010)).

## B. Age Discrimination Claim

MLGW argues that Kindred's claim of age discrimination is procedurally barred due to her failure to administratively exhaust this claim with the EEOC. (ECF No. 84-3 at 4.) Administrative exhaustion is a statutory prerequisite to maintaining claims brought under the ADEA. Allen v. Highlands Hosp. Corp., 545 F.3d 387, 401-02 (6th Cir. 2008). Claimants exhaust their administrative remedies by filing a charge of discrimination with the EEOC. Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 362 (6th Cir. 2010). The EEOC provides charge forms on which claimants can describe the discrimination and check boxes indicating the type of discrimination they allege. However, these charge forms are not the exclusive way to file a charge of discrimination. The Supreme Court has stated that if a document filed with the EEOC is "examined from the standpoint of an objective observer" and "by a reasonable construction of its terms . . . requests the [EEOC] to activate its machinery and remedial processes[,]" it should be considered a charge. Fed. Express Corp. v. Holowecki, 552 U.S. 389, 403 (2008). For a filing to constitute a charge,

> the filing (1) must be verified – that is, submitted under oath or penalty of perjury; (2) must contain information that is sufficiently precise to identify the

parties, and to describe generally the action or practices complained of; and (3) must comply with Holowecki – that is, an objective observer must believe that the filing taken as a whole suggests that the employee requests the agency to activate its machinery and remedial processes[.]

Williams v. CSX Transp. Co., Inc., 643 F.3d 505, 509 (6th Cir. 2011) (internal citations and quotation marks omitted). MLGW argues Kindred never adequately charged her age discrimination claim, since her formal charge of discrimination does not mention age discrimination at all. (ECF No. 1-1 at 1.)

While MLGW correctly argues Kindred's formal charge did not mention age discrimination, her "pre-charge inquiry," also filed with the EEOC, plainly alleged age discrimination. (ECF No. 87-3 at 3.) The Sixth Circuit and other courts have found pre-charge supplemental materials to constitute charges themselves when they satisfy Williams and Holowecki. See Williams, 643 F.3d at 509-10 (finding a "Charge Information Form" a "Charge" even where a separate charge was ultimately filed); see also Russ v. Memphis Light Gas & Water Division, 720 F. App'x 229, 237-38 (6th Cir. 2017) (noting that "it is possible under certain circumstances for an intake questionnaire itself to constitute a charge"); Klotzback-Piper v. Nat. R.R. Passenger Corp., 373 F. Supp. 3d 174, 190 (D.D.C. 2019) (finding an "EEOC intake questionnaire" a charge under Holowecki). However, none of these cases dealt explicitly

with the Pre-Charge Inquiry Form at issue here.[6] The question remains whether Kindred's Pre-Charge Inquiry form suffices as a charge of age discrimination under Williams.

The undersigned submits that it does not. First, the Pre-Charge Inquiry form is not "verified"; it is not submitted under oath or penalty of perjury. Williams also dealt with an unsworn document; however, there the EEOC drafted the formal charge themselves based on an unsworn document the claimant submitted. Williams, 643 F.3d at 507, 509. When creating the formal charge, the EEOC left out certain allegations contained in the unsworn document. Id. Out of fairness, the court construed the sworn charge as having "amended" the unsworn document. Id. Here, Kindred's sworn charge does not reference the Pre-Charge Inquiry at all and was filled out solely by her; the EEOC was not responsible for the error. Second, while the Pre-Charge Inquiry does identify the parties and illegal actions, it does not satisfy Holowecki's requirement that the document demonstrate "objective" intent to have the EEOC "activate its machinery." Holowecki, 552 U.S. at 403. Kindred does not request that the EEOC investigate the allegations contained in the Pre-Charge Inquiry; she merely describes the discriminatory actions and provides the dates when

---

[6]The Pre-Charge Inquiry, otherwise referred to as Form 290A, was first issued by the EEOC in October 2017. (ECF No. 1-1 at 6.)

they occurred. (ECF No. 1-1 at 5.) Without affirmative language, Holowecki's demands are not met. Compare Holowecki, 552 U.S. at 405-06 (six-page affidavit asking the EEOC to "please force Federal Express to end their age discrimination" was sufficient); Williams, 643 F.3d at 510 (request for money damages was sufficient); Woods v. FacilitySource, LLC, 640 F. App'x 478, 482 (6th Cir. 2016) (verified letters requesting the EEOC treat the letters as charges sufficient) with Russ, 720 F. App'x at 233, 237 (description of discrimination with specific anecdotes that indicated the kind of discrimination not sufficient). Further, the Pre-Charge Inquiry form declares, in bold text, that it "IS NOT A CHARGE OF DISCRIMINATION" at the bottom of each page. (ECF No. 87-3 at 1.) By its own terms, the objective intent in filling out the Pre-Charge Inquiry is not to file a charge. Other courts have agreed, finding this explicit warning to differentiate the Pre-Charge Inquiry from intake forms or charge questionnaires. See Herrera v. Di Meo Brothers, Inc., 529 F. Supp. 3d 819, 2021 U.S. Dist. LEXIS 58948, *9-12 (N.D. Ill. 2021) (Acknowledging Holowecki but noting that "the problem here is that Plaintiff is not pointing to an intake form, but a pre-charge inquiry[.]"); Eubanks v. Veolia Water North America Operating Servs., LLC, No. 3:21-cv-357-KHJ-MTP, 2021 WL 4344889, at *3 (S.D. Miss. Sept. 23, 2021) ("The pre-charge inquiry form, standing alone, does not satisfy these

requirements . . . Without verification, the Court cannot consider intake forms to independently qualify as a charge for purposes of exhausting EEOC administrative remedies."); <u>Ferdin v. Toyotetsu TTTX</u>, No. 5:18-CV-885-DAE, 2019 WL 12598992, at *4 (W.D. Tex. Apr. 8, 2019) ("But administrative exhaustion requires both timely filing a charge with the EEOC and the receipt of a statutory notice of the right to sue. Moreover, the Pre-Charge Inquiry form expressly states that it is not a Charge of Discrimination.") (internal quotation marks and citations omitted). Because of these deficiencies, Kindred's Pre-Charge Inquiry form cannot suffice as a charge of age discrimination.

Under the undisputed facts of this case, Kindred could only have exhausted her age discrimination claim through her formal charge. Even though Kindred did not check the age discrimination box, the Sixth Circuit has "recognized that where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." <u>Weigel v. Baptist Hosp. E. Tenn.</u>, 302 F.3d 367, 380 (6th Cir. 2002) (quoting <u>Davis v. Sodexho, Cumberland Coll. Cafeteria</u>, 157 F.3d 460, 463 (6th Cir. 1998)) (internal quotation marks omitted). MLGW argues that Kindred's age discrimination claim does not fall within the scope of her formal EEOC charge, since she did not check the age

discrimination box and did not allege any facts related to age discrimination. (ECF No. 84-3 at 4-5.)

The court agrees with MLGW that if only the formal EEOC charge document is considered, Kindred's age discrimination claim exceeds the scope of the charge and her administrative remedies remain unexhausted. Kindred's EEOC charge reads in full:

> On June 7, 2017, I went out on medical leave. On January 29, 2018, a request was made for additional medical leave thereafter; I was terminated on February 9, 2019, for alleged noncompliance regarding ADAAA interactive process. I believe that I have been discriminated against due to my disability in violation of the Americans with Disabilities Act Amendments Act, ADAAA.

(ECF No. 84-2 at 44.) This narrative does not reference age discrimination. Its facts do not indicate that age discrimination had taken place or lead to such an inference; the charge references only disability discrimination. See George v. Aventis Pharm., Inc., 252 F. Supp. 2d 599, 604 (W.D. Tenn. 2003) ("Plaintiff makes no reference to the allegedly ageist comments made by [Defendant] nor to his alleged feelings of being harassed . . . . Plaintiff's age harassment claim exceeds the scope of his EEOC charge."); Smith v. XPO Logistics, No. 19-cv-2741-SHL-tmp, 2021 WL 3046527, at *4 (W.D. Tenn. Feb. 25, 2021) ("The EEOC charge does not contain any allegations of retaliation, and none of the allegations reasonably relate or give rise to a claim of retaliation . . . [Plaintiff] failed to exhaust the administrative remedies available"), report

and recommendation adopted, 2021 WL 3040762 (W.D. Tenn. Jul. 19, 2021). Because Kindred has not exhausted the administrative remedies for her age discrimination claim, it is procedurally barred.

## C. Disability Discrimination Claims

As a preliminary matter, in her complaint Kindred generally asserts that "[she] did not initiate a request for accommodation under the provisions of the Americans with Disabilities Act as amended." (ECF No. 87-4 at 7.) If taken at face value, this statement would defeat her disability claims insofar as they assert failure to accommodate or retaliation for making an accommodation request. Anderson v. General Motors, LLC, 45 F. Supp. 3d 662, 670 (E.D. Mich. 2014) ("In order to establish a prima facie case for failure to accommodate, a plaintiff must show that . . . [the employee] requested an accommodation[.]") (quoting Johnson v. Cleveland City Sch. Dist., 443 F. App'x 974, 982-83 (6th Cir. 2011)); Baker v. Windsor Republic Doors, 414 F. App'x 764, 776 (6th Cir. 2011) ("In order to prove ADA retaliation, [the plaintiff] was required to establish that [she] engaged in a protected activity"). Despite this statement, given her *pro se* status, the court will treat her request for additional leave on January 29, 2018, as an implicit request for an accommodation for purposes of this motion in order to adequately consider the merits

of Kindred's claims.

1.  <u>Failure to Accommodate</u>

The Sixth Circuit analyzes failure to accommodate claims under the following framework:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

<u>Kleiber v. Honda of Am. Mfg. Inc.</u>, 485 F.3d 862, 868 (6th Cir. 2007) (quoting <u>Hedrick v. W. Reserve Care Sys.</u>, 355 F.3d 444, 452 (6th Cir. 2004)).[7] An individual is "qualified" under the ADA if they are able to "perform the essential functions of [their job] with or without reasonable accommodation." <u>E.E.O.C. v. Ford Motor Co.</u>, 782 F.3d 753, 761 (6th Cir. 2015) (quoting 42 U.S.C. §

_____

[7]This framework is applicable where there is "direct evidence of discrimination" or where "an employer acknowledges that it relied upon the plaintiff's handicap in making its employment decision." <u>Mitchell v. United States Postal Serv.</u>, 738 F. App'x 838, 843-44 (6th Cir. 2018). "Claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." <u>Kleiber</u>, 485 F.3d at 868. Claims premised on "indirect evidence" instead utilize the familiar <u>McDonnell-Douglas</u> burden shifting framework, which MLGW cites in their brief but which is inapplicable to the claims here. <u>Ferrari v. Ford Motor Co.</u>, 826 F.3d 885, 892 (6th Cir. 2016).

12111(8)) (internal quotation marks removed). Essential functions are "fundamental job duties" that would "fundamentally alter" a job if removed. 29 C.F.R. § 1630.2(n)(1). Generally, "regularly attending work on-site is essential to most jobs." Ford, 782 F.3d at 761. Despite this general rule, "under certain circumstances, unpaid medical leave can be a reasonable accommodation for purposes of the ADA." Maat v. Cty. of Ottawa, Mich., 657 F. App'x 404, 412 (6th Cir. 2016) (citing Cehrs v. Ne. Ohio Alzheimer's Research Ctr., 155 F.3d 775, 782-83 (6th Cir. 1998)). But "where an employer has already provided an employee with a lengthy period of medical leave, an extension to that leave can be a reasonable accommodation only when its duration is definite." Id. A definite duration requires the employee to provide a "certain or credibly proven end" date; without one a proposed accommodation is not reasonable, and the employee cannot be considered a qualified individual. Fisher v. Nissan N. America, Inc., 951 F.3d 409, 418 (6th Cir. 2020); Aston v. Tapco Intern. Corp., 631 F. App'x 292, 298 (6th Cir. 2015).

MLGW argues that Kindred was not "qualified" under the ADA because she could not perform the essential functions of her job as a security guard, namely, appearing in person at her assigned site. (ECF No. 84-3 at 7-8.) Kindred agrees that appearing in person at her assigned site is an essential function of her job.

(ECF No. 84-2 at 35) (Q: "And that's an essential function of your job is to be at the facility, correct?" A: "Yes.") She also does not dispute that she was "afforded eight months of continuous leave." (ECF No. 84-1 at 4.) However, she argues that "MLGW was furnished a return to work date." (ECF No. 87-1 at 2.) The return date she cites is April 1, 2018, which was provided by her counselor, Elizabeth Storey, in a fax sent to Conway on January 29, 2018. (ECF No. 84-2 at 23.) The question then becomes whether a reasonable jury could find that this April 1, 2018 date was sufficiently "certain and credibly proven" so as to be adequately definite and reasonable. Aston, 631 F. App'x at 298. If so, this request could create a genuine issue of material fact as to whether the additional leave was a reasonable accommodation, and thus whether Kindred was qualified for her job.

The undersigned submits no reasonable jury could find the April 1 date was sufficiently definite under Sixth Circuit law. Storey's fax states:

> Ms. Kindred was seen for a scheduled session today. Due to her being symptomatic it is suggested she continue to remain off work. A return to work date is undetermined at this time. It is estimated she may return to work on April 1, 2018. However, this is subject to change pending progress. An update on progress can be submitted per request prior to April 1.

(ECF No. 84-2 at 23.) April 1 is not definite here; it is clearly conditional. Storey explicitly stated that "a return to work date

[was] undetermined" and provided April 1 as an "estimat[e]" of when Kindred "may" return to work. Id. In Maat, the Sixth Circuit held that a physician-provided return date was not sufficiently definite where the date "was just a date [doctors] would *hope* that she *might* be able to return to work." Maat, 657 F. App'x at 413; see also Aston, 631 F. App'x at 298 (specific return date not sufficiently definite where plaintiff still required further treatment and possible recuperation time). Cases in which a return date was found adequately definite generally involved plaintiffs who either requested leave provided for within company policy or who had conditions with definite end dates. See Cleveland v. Fed. Express Corp., 83 F. App'x 74, 79 (6th Cir. 2003) (leave for lupus complications stemming from pregnancy could be found reasonable since pregnancy had a clear end date), Cehrs, 155 F.3d at 783 (plaintiff requesting leave as an accommodation under company policy that routinely granted a set amount of leave). Storey's provided date was provisional by its own terms and subject to revision at any time. The date was "insufficient . . . for an additional leave of absence to be a reasonable accommodation under the ADA." Cooley v. East Tenn. Human Res. Agency, Inc., 720 F. App'x 734, 741 (6th Cir. 2017). Because this request was not adequately definite, and therefore unreasonable, Kindred could not perform the essential functions of her job "with or without a

reasonable accommodation" and was not a "qualified" person under the ADA. MLGW had already provided Kindred with eight months of leave despite her not even qualifying for their disability insurance in the first place. (ECF No. 84-2 at 6; ECF No. 87-1 at 1.) No reasonable jury could find that MLGW failed to accommodate her here.

2.   Retaliation

To establish a prima facie case of retaliation under the ADA, a plaintiff must show that "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014). Protected activity includes "oppos[ing] any act or practice made unlawful" by the act, or making a charge, testifying, assisting, or participating in "an investigation, proceeding, or hearing" taken pursuant to the act. 42 U.S.C. § 12203(a). If a plaintiff clears this "low hurdle," Gribcheck v. Runyon, 245 F.3d 547, 551 (6th Cir. 2001), the burden shifts to the defendant to "articulate a nondiscriminatory reason for its actions," which the plaintiff must rebut by showing that the "stated reason is merely pretext for discrimination," Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 526 (6th Cir. 2008).

Assuming Kindred has articulated a prima facie case, MLGW has met their burden of articulating a legitimate non-discriminatory reason for her firing: she could not perform the essential elements of her job even with a reasonable accommodation.[8] (ECF No. 84-3 at 13.) Kindred admitted this in her deposition testimony. (ECF No. 84-2 at 35) (Q: "[A]n essential function of your job is to be at the facility, correct?" A: "Yes."); (Id. at 39) (Q: "How would you secure the facilities if you're not present?" A: "You can't.") Being on-site was an essential function of Kindred's job and indefinite off-site leave was not a reasonable accommodation for that job. The burden thus shifts back to Kindred to demonstrate a genuine issue of material fact exists as to whether MLGW's reason for firing her was pretextual. Pretext is proven by demonstrating

---

[8]The court assumes a prima facie case for efficiency purposes. Under the McDonnell-Douglas burden shifting framework used for ADA retaliation claims, MLGW's stated nondiscriminatory reason for firing Kindred cannot be considered for purposes of determining Kindred's qualification for the job at the prima facie case stage. Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2000). Thus, the analysis contained supra Section C.1 is not applicable to Kindred's retaliation claim until the burden has shifted to MLGW. Ledgerwood v. Nat. Amusements, Inc., 625 F. Supp. 2d 466, 476 (E.D. Mich. 2007) ("Cline held that it is not appropriate at the prima facie stage to rely upon a defendant's alleged nondiscriminatory reason to find that the plaintiff was not qualified.") (internal citations removed and shortened). MLGW's brief conflates discrimination cases with direct and indirect evidence, but Sixth Circuit case law has consistently differentiated the two. Cline, 206 F.3d at 660-61, Mitchell, 738 F. App'x at 846-47, Kirilenko-Ison v. Bd. of Educ. of Danville Independent Schools, 974 F.3d 652, 660-61 (6th Cir. 2020).

"that the proffered reason (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) was insufficient to motivate the employer's action." Baker v. Windsor Republic Doors, 414 F. App'x 764, 778 (6th Cir. 2011). Ultimately, she must demonstrate a triable issue as to "*both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful." Ford, 782 F.3d at 767 (emphasis in original) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Kindred does not satisfy any of the above requirements. Her termination letter states that her employment was terminated "for violation of MLGW HR Policy 22-13, Sick Leave and Short Term Disability Salary Continuation (Non-Occupational Injury/Illness) and failure to cooperate in good faith in the ADAAA interactive process" and notes that MLGW was unable to extend her leave due to their need to "have a person able to be physically present to secure our facilities." (ECF No. 84-2 at 27.) MLGW's brief also states that Kindred was fired because she was unable to be physically present at the job and had not been medically cleared to return. (ECF No. 84-3 at 13.) Kindred does not dispute that she could not be present at the job and thus cannot show that MLGW's "proffered reason" for firing her was false or unlawful. (ECF No. 87-1 at 3.) Phrased another way, given that an employer "is not

required to keep open a job for an employee indefinitely," MLGW articulated a non-discriminatory reason for firing Kindred: she had not come into work for eight months, she could not come into work for the foreseeable future, and her job required her to be present on site. Aston, 631 F. App'x at 298. Kindred has not demonstrated a genuine dispute over whether this reason was false and unlawful. Indeed, given the leave already extended to Kindred and her failure to provide a definite return date, MLGW's real reason for firing Kindred was lawful. No reasonable jury could find otherwise. See Ford, 782 F.3d at 770 (where the employee "admitted that she would not be able to attend work on-site," and "attendance was an essential element of her job," "no reasonable jury could find that the [employer] would continue to pay [the] employee").

## III. RECOMMENDATION

Based on the above, the undersigned recommends that the Motion for Summary Judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

December 6, 2021
Date

**NOTICE**

- 25 -

WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.  ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.